**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
Nashville Division**

| | |
|---|---|
| Phillip Lawson, Gabe Hart, Victor Ashe, James R. Palmer, and the League of Women Voters of Tennessee, <br><br> Plaintiffs, <br><br> v. <br><br> Tre Hargett, in his official capacity as Tennessee Secretary of State; Mark Goins, in his official capacity as Tennessee Coordinator of Elections; Steven R. Finney, in his official capacity as District Attorney for the 1st Judicial District of Tennessee; Barry P. Staubus, in his official capacity as District Attorney for the 2nd Judicial District of Tennessee; Jimmy B. Dunn, in his official capacity as District Attorney for the 4th Judicial District of Tennessee; Ryan Desmond, in his official capacity as District Attorney for the 5th Judicial District of Tennessee; Charme P. Allen, in her official capacity as District Attorney for the 6th Judicial District of Tennessee; Dave S. Clark, in his official capacity as District Attorney for the 7th Judicial District of Tennessee; Jared R. Effler, in his official capacity as District Attorney for the 8th Judicial District of Tennessee; Russell Johnson, in his official capacity as District Attorney for the 9th Judicial District of Tennessee; Shari Tayloe, in her official capacity as District Attorney for the 10th Judicial District of Tennessee; Coty Wamp, in her official capacity as District Attorney for the 11th Judicial District of Tennessee; Courtney Lynch, in her official capacity as District Attorney for the 12th Judicial District of Tennessee; Craig Northcott, in his official capacity as District Attorney for the 14th Judicial District of Tennessee; Jason Lawson, in his official capacity as District Attorney for the 15th | **COMPLAINT** <br><br> Case No. _____ |

1

Judicial District of Tennessee; Jennings H. Jones, in his official capacity as District Attorney for the 16th Judicial District of Tennessee; Ray Whitley, in his official capacity as District Attorney for the 18th Judicial District of Tennessee; Robert J. Nash, in his official capacity as District Attorney for the 19th Judicial District of Tennessee; Glenn Funk, in his official capacity as District Attorney for the 20th Judicial District of Tennessee; Stacey Edmonson, in her official capacity as District Attorney for the 21st Judicial District of Tennessee; Brent Cooper, in his official capacity as District Attorney for the 22nd Judicial District of Tennessee; Mark Davidson, in his official capacity as District Attorney for the 25th Judicial District of Tennessee; Jody Pickens, in his official capacity as District Attorney for the 26th Judicial District of Tennessee; Colin Johnson, in his official capacity as District Attorney for the 27th Judicial District of Tennessee; Steve Mulroy, in his official capacity as District Attorney for the 30th Judicial District of Tennessee; Hans Schwendimann, in his official capacity as District Attorney for the 32nd Judicial District of Tennessee,

Defendants.

Plaintiffs, by and through their attorneys, bring this Complaint against the above-named Defendants, and state the following in support thereof:

## INTRODUCTION

1. Plaintiffs Phil Lawson, Gabe Hart, Victor Ashe, James R. Palmer, and the League of Women Voters of Tennessee ("LWVTN" or the "League") bring this action to prohibit Defendants Tennessee Secretary of State Tre Hargett, Tennessee Coordinator of Elections Mark Goins, and the above-listed Tennessee District Attorneys General from enforcing Tennessee Code Annotated Sections 2-7-115(b) and (c) ("Sections 115(b) and 115(c)").

2

2.      Sections 115(b) and (c) are criminal laws through which the Tennessee legislature purports to deter so-called crossover voting, wherein a voter who supports a particular political party casts a ballot in the primary election of a different political party. But these laws go far beyond deterring crossover voting and are unconstitutional because they threaten voters, including primarily those who have no intent to crossover vote, with felony convictions based on nebulous standards that have no definition under state law and instead are defined by private political parties.

3.      Specifically, Section 115(b) requires that, to vote in a party's primary election, a person must be a "bona fide member of and affiliated with" that party or "declare allegiance" to it, or else face criminal prosecution. Section 115(c), enacted only months ago, requires that prominent notices be posted at all polling places to warn voters that they will be subject to prosecution if they are not a "bona fide member of or affiliated with that political party," or do not "declare allegiance to that party[.]"

4.      Tennessee law provides **no** definition of how a voter becomes a "bona fide member of," "affiliated with" and/or "allegian[t] to" a political party. As a result, Sections 115(b) and (c) are unconstitutional on at least two grounds.

5.      Section 115(b) is unconstitutionally vague because it fails to provide voters with fair notice of what conduct it proscribes and provide standardless discretion, delegating to political parties and prosecuting officials the determination of who has broken the law by voting in a primary.

6.      Sections 115(b) and (c) also—through threats of prosecution based on nebulous and unknowable standards—violate the First Amendment's overbreadth doctrine, as they will deter a far greater range of protected voting conduct than would be needed to protect against a phantom threat of malicious crossover voting.

3

7.     These statutory provisions leave Plaintiffs, including members of LWVTN, and thousands of other Tennesseans unable to determine whether voting in a primary will subject them to prosecution and jail time. As a result, these provisions will deter a potentially enormous number of voters from exercising their fundamental right to vote.

8.     Plaintiffs seek relief from this Court to preserve the fundamental right to vote, and by extension protect our system of representative government.

## JURISDICTION AND VENUE

9.     This action arises under the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

10.     This Court has subject matter jurisdiction pursuant to Article III of the United States Constitution and 28 U.S.C. §§ 1331 and 1343.

11.     This Court is authorized to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

12.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because the Defendants reside in this district and a substantial part of the events giving rise to the claims occurred in this district.

13.     This Court has personal jurisdiction over Defendants Secretary Tre Hargett, Coordinator of Elections Mark Goins, and the named District Attorneys General because they are Tennessee domiciliaries, with their principal offices in Nashville, Tennessee, or the various judicial districts of Tennessee, and their affiliations with the State of Tennessee are so continuous and systematic as to render them at home in this State.

14.     An actual and justiciable controversy exists between Plaintiffs and Defendants.

## THE PARTIES

15.     Plaintiff Phillip Lawson is a resident of and registered voter in Knox County, Tennessee. Mr. Lawson is a successful real estate developer with a focus on affordable housing and a civic leader. He established the nonprofit Legacy Housing Foundation as a vehicle for giving back to affordable housing residents; has served on the boards of the Knoxville Americana Music Foundation, Knoxville Habitat for Humanity, Wesley House Community Center, WDVX Radio, the Beck Cultural Exchange Center, and the Historic Tennessee Theatre Foundation. He is a significant donor to the University of Tennessee; and provides substantial economic support to civil causes through a foundation he established, The Lawson Family Foundation. Mr. Lawson has voted in federal, state, and local elections, including in primary elections, in the past and intends to continue to do so in the future. Although he most often identifies as a Democrat and has been one the largest donors to the Tennessee Democratic Party, but he has voted for Republican and Democratic candidates in general elections and has made financial contributions to both Republican and Democratic candidates. Mr. Lawson's past support of Republicans and Democrats means he cannot know whether he would be deemed  a "bona fide" member of either party. As a result, Mr. Lawson reasonably fears that the people in control of either political party may not consider him a bona fide member affiliated with the party and could prosecute him if he votes in the next primary election. For the March 2024 Tennessee presidential primary, Mr. Lawson chose not to vote in the Knox County Republican Primary (in which he preferred to vote because he supported Republican candidates that he intended to support in the general election) because of his concern that he might be prosecuted if he had done so.

16.     Plaintiff Gabe Hart is a resident of and registered voter in Madison County, Tennessee. In 2022, Mr. Hart knew a candidate who was running for mayor of Madison County

and planned to vote for him in both the Republican primary and the general election. On May 22, 2022, Mr. Hart wrote an article in the Tennessee Lookout in which he stated that he had voted in the Republican mayoral primary in Madison County, Tennessee. After the article was published, Mr. Hart was attacked for voting in the Republican primary because people said that he was not a "bonafide Republican." Mailers were distributed denouncing cross-party voting and mentioning Mr. Hart by name. The Madison County Republican Party threatened legal action against anyone who voted in the primary that was not a Republican. Secretary of State Tre Hargett visited Madison County and openly discussed the possibility of the District Attorney prosecuting anyone who "crossed over" to vote in the primary. District Attorney Pickens informed Mr. Hart that he could be prosecuted for voting in the Republican primary and told him, "There's heat on me to prosecute you." Tennessee Representative Chris Todd referred to Mr. Hart as a "felon" while messaging a constituent.

17.     After Mr. Hart wrote an editorial in the April 14, 2022 edition of the Jackson Sun about voting, the chairmen of the Tennessee Republican Party and the Madison County Republican Party wrote a responsive editorial on April 22, 2022, noting that "Tennessee's Primary Law is simple, Republicans and Democrats are required to vote in their own primary if they wish to vote. This is not optional. The wording is very clear. Violating this law is a very serious action, prosecuted as a Class C misdemeanor and under certain circumstances, a possible felony (per Mark Goins, State Election Commission)." In early 2024 in Madison County, three school board seats were contested in primaries, two with no opposition in the general election. Therefore, the primary election would determine the winner of those races. In 2022, at the urging of the Tennessee Republican Party, the Madison County Election Commission hastily posted at the school board primary elections sheets of 8 1/2 x 11 paper printed with the following: "It is a violation of

6

Tennessee Code Annotated, Section 2-7-115(b), and punishable as a crime under Tennessee Code Annotated, Section 2-19-102 or Section 2-19-107, if a person votes in a political party's primary without being a bona fide member of or affiliated with that political party, or to declare allegiance to that party without the intent to affiliate with that party." Because of these and other actions by State and party agents, Mr. Hart reasonably feared prosecution for voting in the 2024 party primary and fears future prosecution pursuant to Sections 115(b) and (c).

18.     Plaintiff Victor Ashe is a resident of and registered voter in Knox County, Tennessee. He has voted in federal, state, and local elections, including in primary elections, in the past and intends to continue to do so in the future. Mr. Ashe is a lifelong Republican voter; he has served as a Republican Tennessee State Representative and State Senator, the Mayor of Knoxville, Tennessee, and Ambassador to Poland; and he ran as the Republican nominee for United States Senate in 1984. Mr. Ashe currently writes a weekly op-ed column for The Knoxville News-Sentinel in which he regularly criticizes former President Trump and elected Tennessee Republicans, including Representatives Tim Burchett and Mark Green. Mr. Ashe previously voted in the Tennessee Republican presidential primary March 5, 2024. As a result, Mr. Ashe reasonably fears that the people in control of today's Tennessee Republican Party may not consider him a bona fide member affiliated with the party and could seek to prosecute him both for his vote in March and if he votes in the next primary election.[1]

---

[1] While it may seem absurd that a political party would assert that a declared Republican is not a bona fide member, that is exactly what the Republican Party did when it removed Baxter Lee from the Fifth Congressional District primary ballot in 2022. Mr. Lee had given nearly $100,000 to Republican candidates. *See* Georgiana Vines, "Candidate who was kicked off GOP ballot is from notable Knoxville family," Knoxville News Sentinel Apr. 26, 2022, *available at* https://www.knoxnews.com/story/news/columnists/georgiana-vines/2022/04/25/baxter-lee-kicke d-off-gop-ballot-has-knoxville-ties-georgiana-vines/7413476001/. On April 6, 2024, the Tennessee Republican Party State Executive Committee also voted to prevent eight potential

7

19.     Plaintiff James R. Palmer is a resident of and registered voter in Roane County, Tennessee. Mr. Palmer had planned to vote in the March 5, 2024 Republican Primary until he learned of the state laws at issue in this case. Over the years, Mr. Palmer has occasionally placed signs supporting Democratic candidates in his front yard. Mr. Palmer holds a public position as the Chairman of The Industrial Development Board of the County of Roane, Tennessee, and did not want to risk public embarrassment if someone challenged his right to vote in the 2024 Republican presidential Primary. He chose not to vote in the 2024 Tennessee presidential primary held on March 5, 2024.

20.     Plaintiff League of Women Voters of Tennessee is a nonprofit, nonpartisan, membership-based, grassroots, political organization whose mission is to empower voters and defend democracy. The League is a volunteer-based organization and its leadership consists of volunteers, not paid staff. LWVTN seeks to promote civic engagement through informed and active participation in government. It accomplishes this mission in part by helping Tennessee citizens register to vote, educating voters about the issues that impact them, and encouraging voters to be active participants in democracy through engaging with elected officials and their policy decisions. In 2022 over 84,000 Tennesseans used VOTE411.org, which is in part managed by LWVTN, to get reliable voter information.

21.     LWVTN is the Tennessee affiliate of the national League of Women Voters and has over 1,000 members statewide, spread out amongst various local Leagues across Tennessee. LWVTN has a diverse membership along racial, ethnic, socioeconomic, religious, and political lines. LWVTN has one or more members in the following Tennessee judicial districts: First,

---

Republican voters from serving as delegates to the 2024 Republican Convention after determining they were not "bona fide Republicans". The Tennessee Star April 7, 2024.

Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, Fourteenth, Fifteenth, Sixteenth, Eighteenth, Nineteenth, Twentieth, Twenty-first, Twenty-Second, Twenty-Fifth, Twenty-Seventh, Thirtieth, and Thirty-Second.

22.     A core component of the League's mission is to advise its members and the public how to participate in the democratic process. During election seasons, LWVTN sees an uptick in the number of requests by phone or by email from members of the public with specific questions regarding their own eligibility to vote or their access to a ballot.  LWVTN experienced a similar uptick in inquiries related to the recent March 5, 2024 primary, but significantly more questions focused on the challenged provisions and whether the voter would be eligible to vote in the upcoming primary. Indeed, the top subject of voter inquiries to the League leading up to the March 5, 2024 primary was Sections 115(b) and (c). The vagueness of Sections 115(b) and (c) frustrated the ability of LWVTN to advise voters concerning their eligibility. Moreover, LWVTN received reports from members and other persons about Tennessee voters being deterred from voting during the March 5, 2024 primary because they were concerned about their eligibility given Sections 115(b) and/or (c).

23.     In connection with the March 5, 2024 primary, LWVTN became aware that the interpretation and enforcement of Sections 115(b) and (c) will vary depending on which judicial district voters live in. For example, the District Attorney for the Eleventh Judicial District gave an interview in February 2024 in which she said that she was "not even sure [Sections 115(b) and (c)] would hold up in the court of law" and that she has "no desire to find that out through prosecution." On the other hand, the District Attorney for the Fifteenth Judicial District issued a letter in January 2024 specifically discussing Sections 115(b) and (c) and announcing an intent to investigate and prosecute citizens accused of violating those sections. In fact, he encouraged citizens to report each

9

other for investigation and prosecution in his letter. These highly conflicting stances further complicate and frustrate the mission of LWVTN in that they demonstrate the patchwork interpretation and enforcement of these statutes across the state and inability of the League to provide accurate and reliable information to voters as a trusted resource. The League is obstructed from accomplishing this core mission due to the vagueness of Sections 115(b) and (c) and the starkly divergent interpretations from District Attorneys charged with enforcing the law.

24. As a nonpartisan organization that does not support candidates or parties, LWVTN does not inquire about members' political affiliations or how members vote; nevertheless, LWVTN has members who self-identify as Democrats, other members who self-identify as Republicans, and others who identify as independent voters, all of whom may be subject to prosecution given the vague terms of the statute. Sections 115(b) and 115(c) are likely to prevent some League members from voting. Further, given the League's core mission and activities to educate, inform, engage, and assist voters, the statute prevents LWVTN from fulfilling its primary function of providing voter information because it does not know how to inform its members and the general public accurately and effectively on voting issues related to the upcoming primaries without subjecting them to potential prosecution and/or subjecting LWVTN to an impossible reporting standard for promulgating "erroneous" information about permissible voting conduct.[2] Absent relief from the Court, the LWVTN expects the same issues in future primaries (including August 2024) and the same inability to perform its core mission of engaging and informing voters.

---

[2] *See, e.g.*, Tenn. Code Ann. § 2-2-142 (h) ("Any person or organization who provides or publishes erroneous or incorrect information regarding the qualifications to vote, the requirements to register to vote, whether an individual voter is currently registered to vote or eligible to register to vote, voter registration deadlines, or polling dates, times, and locations shall, upon discovery, immediately notify the appropriate county election commission and the coordinator of elections.").

25.     During the 2023-24 fiscal year, LWVTN invested a considerable amount of its most valuable asset—volunteer time—addressing the impact of Sections 115(b) and (c). LWVTN spent over 225 collective volunteer hours responding to the new law. Additionally, over $1,000 was spent on support services and resources connected with that volunteer time. Had that time and money not been spent on responding to Sections 115(b) and (c), the League would have dedicated those resources to developing two time-sensitive pilot projects that were included in the budget for fiscal year 2023-24.  It was anticipated that the major start-up costs for both of these projects would be the significant level of time and energy that the LWVTN's volunteer leadership team would need to devote to building the foundational collaborative relationships needed for successful implementation. The urgent need to address the impact of Sections 115(b) and (c) on Tennessee's voters required LWVTN to forego plans for the two pilot projects.

26.     If Sections 115(b) and (c) remain in force, LWVTN anticipates even more expenditures of time and resources in the future. LWVTN has begun to develop resources to try to address ongoing voter confusion: (a) new training and support materials for poll observers to document voter issues during primary elections; (b) information for first time voters (high school and college students) regarding the implications of selecting a primary ballot; (c) information for voters in identified counties in Tennessee in which there is an increased risk of prosecution; and (d) other educational materials and information related to Sections 115(b) and (c) and how they are being interpreted and enforced in Tennessee.  These materials cannot provide Tennesseans with definitive answers given the inherent vagueness of the laws.  But they represent LWVTN's best efforts to respond to voters' need for information concerning eligibility.

27.     LWVTN has budgeted $10,600 to adequately respond to the voter confusion, intimidation, and uncertainty created by these laws, though more may be needed. The League has

11

budgeted $800 for additional poll observer training related to Sections 115(b) and (c) and potential voter confusion/intimidation issues; $3,300 to produce and distribute guidance to voters in counties such as Madison, Jackson, Macon, Smith, Trousdale, and Wilson where voters face an increased risk of prosecution; and $6,500 to produce and distribute guidance (print and online, including social media buys) for first-time voters about primary voting, party affiliation, and other issues related to Sections 115(b) and (c). This is all money that the League would otherwise use on specific voter registration and get-out-the-vote initiatives that were approved in the LWVTN budget for 2024-25. It is being directly diverted because Sections 115(b) and (c) remain in force.

28. Defendant Tre Hargett is the Secretary of State of Tennessee. As such, he oversees the State's election process. Under Tennessee law, he is charged with the administration of elections in Tennessee. Defendant Hargett is sued in his official capacity only.

29. Defendant Mark Goins is the Tennessee Coordinator of Elections. In this capacity, he has the express duty to "investigate or have investigated by local authorities the administration of the election laws and report violations to the district attorney general or grand jury for prosecution . . ." *See* Tenn. Code Ann. § 2-11-202(a)(5)(A)(i). Defendant Goins is sued in his official capacity only.

30. Defendant Steven R. Finney is the District Attorney for the 1st Judicial District of Tennessee. Under Tennessee law, he is empowered to prosecute violations of the election laws. *See* Tenn. Code Ann. § 2-11-202(a)(5)(A)(1). Defendant Finney is sued in his official capacity only.

31. Defendant Barry P. Staubus is the District Attorney for the 2nd Judicial District of Tennessee. Under Tennessee law, he is empowered to prosecute violations of the election laws.

12

*See* Tenn. Code Ann. § 2-11-202(a)(5)(A)(1). Defendant Staubus is sued in his official capacity only.

32.     Defendant Jimmy B. Dunn is the District Attorney for the 4th Judicial District of Tennessee. Under Tennessee law, he is empowered to prosecute violations of the election laws. *See* Tenn. Code Ann. § 2-11-202(a)(5)(A)(1). Defendant Dunn is sued in his official capacity only.

33.     Defendant Ryan Desmond is the District Attorney for the 5th Judicial District of Tennessee. Under Tennessee law, he is empowered to prosecute violations of the election laws. *See* Tenn. Code Ann. § 2-11-202(a)(5)(A)(1). Defendant Desmond is sued in his official capacity only.

34.     Defendant Charme P. Allen is the District Attorney for the 6th Judicial District of Tennessee. Under Tennessee law, she is empowered to prosecute violations of the election laws. *See* Tenn. Code Ann. § 2-11-202(a)(5)(A)(1). Defendant Allen is sued in her official capacity only.

35.     Defendant Dave S. Clark is the District Attorney for the 7th Judicial District of Tennessee. Under Tennessee law, he is empowered to prosecute violations of the election laws. *See* Tenn. Code Ann. § 2-11-202(a)(5)(A)(1). Defendant Clark is sued in his official capacity only.

36.     Defendant Jared R. Effler is the District Attorney for the 8th Judicial District of Tennessee. Under Tennessee law, he is empowered to prosecute violations of the election laws. *See* Tenn. Code Ann. § 2-11-202(a)(5)(A)(1). Defendant Effler is sued in his official capacity only.

37.     Defendant Russell Johnson is the District Attorney for the 9th Judicial District of Tennessee. Under Tennessee law, he is empowered to prosecute violations of the election laws. *See* Tenn. Code Ann. § 2-11-202(a)(5)(A)(1). Defendant Johnson is sued in his official capacity only.

13

38.     Defendant Shari Tayloe is the District Attorney for the 10th Judicial District of Tennessee. Under Tennessee law, she is empowered to prosecute violations of the election laws. *See* Tenn. Code Ann. § 2-11-202(a)(5)(A)(1). Defendant Tayloe is sued in her official capacity only.

39.     Defendant Coty Wamp is the District Attorney for the 11th Judicial District of Tennessee. Under Tennessee law, she is empowered to prosecute violations of the election laws. *See* Tenn. Code Ann. § 2-11-202(a)(5)(A)(1). Defendant Wamp is sued in her official capacity only.

40.     Defendant Courtney Lynch is the District Attorney for the 12th Judicial District of Tennessee. Under Tennessee law, she is empowered to prosecute violations of the election laws. *See* Tenn. Code Ann. § 2-11-202(a)(5)(A)(1). Defendant Lynch is sued in her official capacity only.

41.     Defendant Craig Northcott is the District Attorney for the 14th Judicial District of Tennessee. Under Tennessee law, he is empowered to prosecute violations of the election laws. *See* Tenn. Code Ann. § 2-11-202(a)(5)(A)(1). Defendant Northcott is sued in his official capacity only.

42.     Defendant Jason Lawson is the District Attorney for the 15th Judicial District of Tennessee. Under Tennessee law, he is empowered to prosecute violations of the election laws. *See* Tenn. Code Ann. § 2-11-202(a)(5)(A)(1). Defendant Lawson is sued in his official capacity only.

43.     Defendant Jennings H. Jones is the District Attorney for the 16th Judicial District of Tennessee. Under Tennessee law, he is empowered to prosecute violations of the election laws. *See* Tenn. Code Ann. § 2-11-202(a)(5)(A)(1). Defendant Jones is sued in his official capacity only.

14

44.     Defendant Ray Whitley is the District Attorney for the 18th Judicial District of Tennessee. Under Tennessee law, he is empowered to prosecute violations of the election laws. *See* Tenn. Code Ann. § 2-11-202(a)(5)(A)(1). Defendant Whitley is sued in his official capacity only.

45.     Defendant Robert J. Nash is the District Attorney for the 19th Judicial District of Tennessee. Under Tennessee law, he is empowered to prosecute violations of the election laws. *See* Tenn. Code Ann. § 2-11-202(a)(5)(A)(1). Defendant Nash is sued in his official capacity only.

46.     Defendant Glenn Funk is the District Attorney for the 20th Judicial District of Tennessee. Under Tennessee law, he is empowered to prosecute violations of the election laws. *See* Tenn. Code Ann. § 2-11-202(a)(5)(A)(1). Defendant Funk is sued in his official capacity only.

47.     Defendant Stacey Edmondson is the District Attorney for the 21st Judicial District of Tennessee. Under Tennessee law, she is empowered to prosecute violations of the election laws. *See* Tenn. Code Ann. § 2-11-202(a)(5)(A)(1). Defendant Edmondson is sued in her official capacity only.

48.     Defendant Brent Cooper is the District Attorney for the 22nd Judicial District of Tennessee. Under Tennessee law, he is empowered to prosecute violations of the election laws. *See* Tenn. Code Ann. § 2-11-202(a)(5)(A)(1). Defendant Cooper is sued in his official capacity only.

49.     Defendant Mark Davidson is the District Attorney for the 25th Judicial District of Tennessee. Under Tennessee law, he is empowered to prosecute violations of the election laws. *See* Tenn. Code Ann. § 2-11-202(a)(5)(A)(1). Defendant Davidson is sued in his official capacity only.

50.    Defendant Jody Pickens is the District Attorney for the 26th Judicial District of Tennessee. Under Tennessee law, he is empowered to prosecute violations of the election laws. *See* Tenn. Code Ann. § 2-11-202(a)(5)(A)(1). Defendant Pickens is sued in his official capacity only.

51.    Defendant Colin Johnson is the District Attorney for the 27th Judicial District of Tennessee. Under Tennessee law, he is empowered to prosecute violations of the election laws. *See* Tenn. Code Ann. § 2-11-202(a)(5)(A)(1). Defendant Johnson is sued in his official capacity only.

52.    Defendant Steve Mulroy is the District Attorney for the 30th Judicial District of Tennessee. Under Tennessee law, he is empowered to prosecute violations of the election laws. *See* Tenn. Code Ann. § 2-11-202(a)(5)(A)(1). Defendant Mulroy is sued in his official capacity only.

53.    Defendant Hans Schwendimann is the District Attorney for the 32nd Judicial District of Tennessee. Under Tennessee law, he is empowered to prosecute violations of the election laws. *See* Tenn. Code Ann. § 2-11-202(a)(5)(A)(1). Defendant Schwendimann is sued in his official capacity only.

## FACTUAL ALLEGATIONS

### Modern Primary Elections in Tennessee

54.    Primary elections are an increasingly fundamental part of the political process. For a registered voter to participate effectively in the selection of candidates for a general election in Tennessee, the registered voter must vote in a political party's primary election.

16

55.     The most formidable general election candidates, and the subsequent winners of political elections in Tennessee, are almost always candidates from the dominant political parties in the state: the Republican Party and the Democratic Party.

56.     Voting in a political party's primary is essential for a registered voter to have a voice in determining the ultimate candidate for general election and the elected officials who will hold office.

57.     In Tennessee, primary voting is often determinative of general election outcomes. The current partisan balance in most of the 95 counties in Tennessee makes selection as a party's candidate a virtual guarantee of victory in the subsequent general election.

58.     While Tennesseans must register to vote as a general matter, they do not and cannot register as members of any party. In other words, a Tennessee voter cannot be a "registered Republican" or a "registered Democrat." When the state holds primary elections, a would-be voter who otherwise is eligible to vote must select at the polling place which party's ballot (i.e., Democratic or Republican) they intend to fill out. The voter may not fill out a ballot for more than one party in a given primary. Once a voter has made their selection and deposited their ballot, the voter's choice of party ballot is marked and maintained as public record. Because there are no formal party voter rolls, voters may—and many often do—switch to vote in a different party's primary from one election to the next.

59.     For instance, historically and today, some Tennesseans consider themselves Republicans for national issues and Democrats on state issues. Thus, a given voter may have chosen a Democratic ballot in Tennessee's state judicial primary and supported the Democratic nominee in the general election, and then chosen a Republican ballot in the gubernatorial and congressional primary and supported the Republican nominees in the general.

**Sections 115(b) and 115(c) Purportedly Intend to Criminalize Voting in Primary Elections Only When "Cross-Over Voting" Takes Place in Primary Elections**

60.     Sections 115(b) and (c) are criminal laws through which the Tennessee legislature purports to deter voting by supporters of one political party in the primary elections of other political parties.

61.      Section 115(b), enacted in 1972, states "a registered voter is entitled to vote in a primary election for offices for which the voter is qualified to vote at the polling place where the voter is registered if":

   (1)     The voter is a bona fide member of and affiliated with the political party in whose primary the voter seeks to vote; or

   (2)     At the time the voter seeks to vote, the voter declares allegiance to the political party in whose primary the voter seeks to vote and states that the voter intends to affiliate with that party.

62.     Violation of Section 115(b) is punishable under Tennessee Code Annotated §§ 2-19-102 and 2-19-107.

63.     Tennessee Code Annotated Section 2-19-102 reads:

   A person commits a Class C misdemeanor if such person knowingly does any act prohibited by this title, or if such person knowingly fails to do any act which such person is required to do by this title, or if such person knowingly does any act with the intent that another shall do an act prohibited by this title.

64.     Tennessee Code Annotated Section 2-19-207 reads:

   (a)     A person commits a Class D felony who:

      (1)     Intentionally and knowing that such person is not entitled to, registers or votes in any manner or attempts to register or vote in any manner where or when such person is not entitled to under this title, including voting more than once in the same election; or

18

      (2)      Votes in the primary elections of more than one (1) political party in an election.

    (b)      When any person is convicted of a violation of subdivision (a)(1) or (a)(2), in addition to any other punishment that may be imposed for the offense, the court shall impose a fine of one thousand dollars ($1,000). The additional fine shall be paid to the clerk of the court imposing sentence, who shall transfer it to the state treasurer, who shall deposit the fine in the reward pool fund, created by § 40-8-105.

65.    While Section 115(b) states that a primary voter must be a "bona fide" member or "affiliated with" the party in whose primary they vote, there is nothing in the statute that dictates how or when such membership may be changed, nor whether such membership must be consistent across all levels of elections, let alone anything in the statute that defines what "bona fide" means.

66.    In May 2023, in connection with a growing movement of state politicians to deter crossover primary voters, the Legislature enacted Section 115(c).

67.    Section 115(c) provides that on primary election voting days the officer of elections at each polling place must post a sign that is a minimum of 8 ½ inches by 11 inches with a yellow background in bolded, black text contain the following language:

**It's the law! Please read…**

**It is a violation of Tennessee Code Annotated, Section 2-7-115(b), and punishable as a crime under Tennessee Code Annotated, Section 2-19-102 or Section 2-19-207, if a person votes in a political party's primary without being a bona fide member of or affiliated with that political party, or to declare allegiance to that party without the intent to affiliate with that party.**

Tenn. Code Ann. § 2-7-115(c) (emphasis in original).

68.    Section 115(c) requires the officer of elections at each polling place to post the sign in a prominent, highly visible location within the polling place.

19

69.     Section 115(c) is silent as to what information is provided, if any, and how that information is provided, to voters who vote absentee and therefore do not vote at a physical voting place.

**Threats of Prosecution**

70.     Tennessee recently has indicated that it is ready and willing to enforce Section 115(b) and its criminal penalties.

71.     In April 2022, Defendant Hargett gave a speech in which he emphasized his intent to begin enforcing Section 115 (b). As he put it at the time, "[p]eople need to understand when you go vote in a primary, you are supposed to vote in the primary in which you are a member of the party. . . . The DA could actually prosecute that if people are willingly going in and voting in the other party."[3]

72.     Two months later, in June 2022, Republican candidates challenged the outcomes of two close elections in Williamson County based on alleged "crossover voting" by specific Democratic voters. While the Tennessee Republican Party Executive Committee voted to uphold the election results, its members expressed a desire to preclude Democrats from voting in Republican primaries, the candidates identified the specific voters who they alleged should not have been permitted to vote in the election, and similar "discord" "over bonafides and crossover voting" arose in connection with at least two other primaries, including in a challenge to a mayoral Republican primary in Hamilton County and in a dispute regarding whether a particular candidate for U.S. Congress could appear on the Republican primary ballot.[4]

---

[3] *Tennessee Secretary of State*, *Tre Hargett, speaks at Jackson Rotary Club luncheon*, WNBJ, Apr. 21, 2022, https://www.wnbjtv.com/single-post/tennessee-secretary-of-state-tre-hargett-speaks-at-jackson-rotary-club-luncheon.
[4] J. Holly McCall, *Tennessee Republican Party Upholds Williamson County Primary Results*, Tennessee Outlook, Jun. 10, 2022, https://tennesseelookout.com/briefs/tennessee-republican-party-upholds-williamson-county-primary-results/.

73.     When discussing the issue on the Tennessee House floor, Chairman Rudd claimed that "there are two people currently under indictment . . . for organizing crossing over into the other party's primary . . . ." H.B. 0828, 113th Gen. Assemb. 27th Sess. (Tenn. 2023), https://tnga.granicus.com/player/clip/28402?view_id=703&redirect=true&h=3d7777e0d1fe502e02ad334c0d4ea8ee.

74.     And during debate on enacting Section 115(c) as part of HB0828 and SB0978, the bill's sponsor confirmed that it is "up for conjecture" whether someone could be prosecuted if they cast a vote in a Republican primary after having historically voted for Democrats in prior elections. *Id.*

75.     Mae Beavers, the Chairwoman of the Wilson County Republican Primary, wrote to Defendant Jason Lawson, the District Attorney General for the 15th Judicial District, expressing concerns regarding violations of Tenn. Code Ann. § 2-7-115. Lawson responded on January 31, 2024 that "As the crime occurs upon the casting of an illegal ballot, and as the early voting period has not yet begun for the election, a crime has not yet been committed. I would advise that in the event that you become aware of anyone breaking any provision of any law, you should report such to the authorities for an investigation. I have the greatest confidence that once the investigation is completed, law enforcement will respond appropriately."

76.     District Attorney Pickens informed Plaintiff Hart that he could be prosecuted for voting in the Republican primary and told him, "There's heat on me to prosecute you." Tennessee Representative Chris Todd referred to Mr. Hart as a "felon" while messaging a constituent.

### Sections 115(b) and 115(c) Are Void For Vagueness and Violate The Due Process Clause of the Fourteenth Amendment

77.     Statutes are void for vagueness when they (1) "fail[] to give ordinary people fair notice" of what conduct is prohibited, or (2) are "so standardless that [they] invite[] arbitrary

21

enforcement" from authorities who lack direction. *Johnson v. United States*, 576 U.S. 591, 595 (2015); *see also Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (noting that the second element of the doctrine is most significant); *Miller v. City of Cincinnati*, 622 F.3d 524, 539 (6th Cir. 2010) ("The void-for-vagueness doctrine not only ensures that laws provide 'fair warning' of proscribed conduct, but it also protects citizens against the impermissible delegation of basic policy matters 'for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.'" (citation omitted)); *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 556 (6th Cir. 1999).

78.     Vague statutes that chill the freedom to fully participate in the political process are unconstitutional. *See, e.g.*, *Tenn. State Conf. of N.A.A.C.P. v. Hargett*, 420 F. Supp. 3d 683, 698-99 (M.D. Tenn. 2019) (finding First Amendment violated when the "threat of penalties [wa]s likely to have a chilling effect on" voting-related activities).

79.     The Supreme Court has emphasized that our Constitution demands a "more stringent vagueness test" when a law "threatens to inhibit the exercise of constitutionally protected rights." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982). Thus, the standard of heighted scrutiny applies where, as here, statutes threaten criminal penalties that result in the impingement of the fundamental right to vote. *See League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 476 (6th Cir. 2008) ("The right to vote is a fundamental right, 'preservative of all rights.'" (internal citations omitted)); *Memphis A. Phillip Randolph Inst. v. Hargett*, 482 F. Supp. 3d 673, 687 (M.D. Tenn.), *aff'd on other grounds,* 978 F.3d 378 (6th Cir. 2020) ("The Court well understands that the constitutional right to vote is 'fundamental.'").

80.     Section 115(b) is void for vagueness because it imposes criminal punishment and fails to provide fair notice to citizens of what conduct is prohibited and also because it is so standardless it invites arbitrary enforcement. *Johnson*, 576 U.S. at 595.

81.     Section 115(b) imposes a criminal penalty without providing fair or adequate notice such that registered voters might understand if they are "a bona fide member of and affiliated with" the political party in the primary in which voters seek to vote.

82.     Section 115(b) also fails to provide fair or adequate notice to registered voters regarding what it means to "declare allegiance" to the political party in the primary in which voters seek to vote or what it means to "intend[] to affiliate with" that political party.

83.     Tennessee law provides no definition of any of these terms to guide registered voters and voter-informing groups like LWVTN seeking to comply with the law.

84.     The absence of such definitions means that Section 115(b) fails to provide fair or adequate notice to citizens of what conduct is prohibited.

85.     Moreover, Section 115(b) not only fails to define what is prohibited, but also it impermissibly delegates the definition of unlawful conduct to private entities, the political parties.

86.     Even if such delegation were permissible, the political parties have no functional definition, either. The Republican Party's bylaws *do not define* a bona fide member for the purpose of voting in a primary *at all*. The Democratic Party's Bylaws at least offer a definition, but it, too, is vague and entirely subjective.

87.     Therefore, the terms fall below the constitutional threshold for specificity and render the statute too vague to provide anything close to adequate notice to Plaintiffs Lawson, Hart, Ashe, Palmer, LWVTN and its members, and other similarly situated voters.

23

88.     Section 115(b) is void for vagueness for an additional reason: it fails to provide clear guidelines to govern enforcement, allowing for impermissibly broad discretion and discrimination by the party, the prosecutor, or both.

89.     Because neither voters nor poll workers have any way of confirming voters' "bona fides" when the voters walk into a polling place, enforcement of Section 115(b) would need to happen after a voter casts a vote.

90.     This post hoc nature of enforcement gives political parties, poll workers, or theoretically any citizen the ability to swear out criminal complaints against voters after an election, even though the voters had no chance to conform to the law before voting.

91.     It also gives free license to district attorneys to prosecute their political opponents.

92.     A standard that gives officials so much leeway is unconstitutional.

93.     Such a standard is even more unconstitutional in the fact of Section 115(c) that uses the same impossible vague terms to warn voters against exercising their right to vote.

94.     Section 115(b) thus fails to meet the stringent vagueness test applicable when a law threatens criminal sanctions, especially when the law also threatens to inhibit the exercise of constitutionally protected rights such as the right to vote.

Section 115(b) and 115(c) violate the Fourteenth Amendment of the United States Constitution and is unenforceable.

**Sections 115(b) and 115(c) Violate the First Amendment's Overbreadth Doctrine**

95.     The First Amendment to the United States Constitution provides that "Congress shall make no law abridging the freedom of speech, . . . ; or the right of the people peaceably to assemble, and to petition the Government . . . ."

24

96.     The speech and petition clauses of the First Amendment have long been held to "safeguard[] an individual's right to participate in the public debate through political expression and political association." *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 203 (2014).

97.     The First Amendment's "overbreadth doctrine" permits "an individual whose own speech or conduct may be prohibited" to "challenge a statute on its face 'because it threatens [the free speech rights of] others.'" *Airport Comm'rs v. Jews for Jesus*, 482 U.S. 569, 574 (1987).

98.     The doctrine is especially apt where a statute threatens criminal sanctions, because "[m]any persons, rather than undertake the considerable burden (and sometimes risk) of vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech, harming not only themselves but society as a whole, which is deprived of an uninhibited marketplace of ideas." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003).

99.     Facial challenges to overly broad statutes are allowed for the benefit of society to prevent the statute from chilling the First Amendment rights of parties not before the court. *Sec'y of State of Md. v. Munson Co., Inc.*, 467 U.S. 947, 958 (1984).

100.    Sections 115(b) and 115(c) threaten voters with criminal sanctions.

101.    Section 115(c) combines a prominently threatening sign with the impossibly vague law in Section 115(b) to penalize or deter a wide range of constitutionally protected voting conduct.

102.    The statute deters direct voting behavior of voters who have never voted before and do not know if they have the required bona fides or allegiances to the political party for which they wish to vote.

103.    The statute deters direct voting behavior of voters who may wish to switch parties.

104.    The statute also deters expressive conduct that accompanies voting.

105. The statute deters Plaintiff LWVTN from fulfilling its mission of communicating election-related information to voters because it does not know how to inform its members and the general public accurately and effectively on voting issues related to the upcoming primaries.

106. Tennessee does not have a sensible basis for distinguishing between conduct that is prohibited under Section 115(b) from that which is permissible.

107. There is no conceivable government interest that justifies the criminalization of voting conduct based on the unwritten whims of poll workers, state party leadership, or local prosecutors.

108. Even if crossover voting were actually becoming problematic in a way that harmed the State, the statutes' vagueness makes it impossible for a court to competently apply and enforce its prohibitions in a way that would address that problem.

## COUNT ONE

**Tennessee Code Annotated Sections 2-7-115(b) and 2-7-115(c) Violate the Fourteenth Amendment Guarantee of the Right to Due Process of Law 42 U.S.C. § 1983**

109. Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

110. The Defendants are governmental actors or employees acting under the color of State law for purposes of 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution.

111. The Due Process of the Fourteenth Amendment, enforceable pursuant to 42 U.S.C. § 1983, provides no person shall be deprived of life, liberty or property without the due process of law, nor shall any State deprive any person of life, liberty or property, without due process of law.

26

112.     A statute is void under the Due Process Clause when it fails to give a person of ordinary intelligence fair notice that his or her contemplated conduct is forbidden by the statute or is so indefinite that it encourages arbitrary and erratic arrests and convictions.

113.     The Due Process Clause provides even further protection when the uncertainty induced by the statute threatens to inhibit the exercise of constitutionally protected rights. The Due Process Clause also provides heightened protection when criminal penalties may be imposed based upon the statute.

114.     The statutes at issue here advise that an individual violates the law and is subject to criminal prosecution if he or she votes in a primary without being a "bona fide member" of the applicable party or without maintaining sufficient allegiance to the party. But Tennessee law provides no definitions for those operative terms and leaves Plaintiffs and Tennessee voters to guess as to whether they maintain sufficient affiliation with either political party to vote without risking prosecution.

115.     Plaintiffs, including LWVTN's members and voters it advises, cannot merely declare allegiance to either political party at the ballot box, as the statutes further criminally proscribe declarations of allegiance unless the same are made with "intent to affiliate." There is no definition of what constitutes a sufficient "intent to affiliate" and the time frame in which such intention is operable: today, tomorrow, next year, or indefinitely.

116.     By leaving the operative terms undefined and fundamentally unclear, the statute encourages arbitrary prosecution. Anyone who is deemed to be an undesirable voter in either primary may be threatened, prosecuted, or arrested for attempting to vote without maintaining sufficient allegiance to the party, as state officials may ascribe definitions to the terms "bona fide" and "affiliated with" that vary from voter to voter.

117.     As a result of the uncertainty induced by the statutes, Plaintiffs Lawson, Hart, Ashe, Palmer, some LWVTN voters fear prosecution if they exercise their fundamental constitutional right to vote in either political party primary. Plaintiff LWVTN also fears advising its members and voters who seek its guidance in a way that could lead them to face prosecution or which would otherwise involve promulgating erroneous information in contravention of state law.

118.     Because the free exercise of constitutional rights is threatened by the vagueness of the statutes, and because criminal punishment is permitted under the statutory scheme, heightened protection is afforded to Plaintiffs by the Due Process Clause.

119.     The statutes fail to provide the specificity demanded by the Due Process Clause, and they are unenforceable. Plaintiffs Lawson, Hart, Ashe, Palmer, and LWVTN members, as persons of ordinary intelligence, are unable to determine whether their degree of affiliation with either political party makes it safe for them to vote without risking criminal prosecution. Plaintiff LWVTN is unable to determine how to advise voters and is thus limited in its ability to perform its mission.

120.     Therefore, the Court should declare Tennessee Code Annotated Sections 2-7-115(b) and 2-7-115(c) unconstitutional and enjoin the enforcement of the same.

## COUNT TWO

### Tennessee Code Annotated Sections 2-7-115(b) and (c) Violate the First Amendment Right to Freedom of Speech 42 U.S.C. 1983

121.     Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

122.     The Defendants are governmental actors or employees acting under the color of State law for purposes of 42 U.S.C. § 1983 and the First and Fourteenth Amendments of the United States Constitution.

123. The First Amendment of the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, protects the Plaintiffs' fundamental right to participate in the political process, including the fundamental right to vote.

124. The First Amendment, coupled with the Due Process Clause of the Fourteenth Amendment, enforceable pursuant to 42 U.S.C. § 1983, protects the Plaintiffs' fundamental right to vote without a state law depriving them of life, liberty, or property without due process of law.

125. By combining a prominently threatening sign with an impossibly vague law, Section 115 penalizes or deters an extraordinary range of protected voting conduct.

126. In addition to the direct voting behavior that Section 115 deters, it will also deter or penalize a host of expressive conduct that accompanies voting.

127. Plaintiffs' inability to determine whether or not they, their members, or voters they advise are legally qualified to vote in a Tennessee political party primary prevents Plaintiffs, and similarly situated voters, from participating in the political process and chills their freedom of political speech.

128. Tennessee Code Annotated Sections 2-7-115(b) and (c) violate Plaintiffs' constitutional rights granted by the First and Fourteenth Amendments to engage in the political process and to exercise their fundamental right to vote.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

 (i) Declare that Tennessee Code Annotated Sections 2-7-115(b) and (c) are (1) void for vagueness under the Fourteenth Amendment, and (2) overbroad and in violation of the First Amendment's free speech clause.

(ii)     Preliminarily and permanently enjoin Defendants and their employees, agents, and successors in office from enforcing Tennessee Code Annotated Sections 2-7-115(b) and (c);

(iii)    Award Plaintiffs their reasonable attorneys' fees and costs, including pursuant to 42 U.S.C. § 1988;

(iv)    Grant such other relief as the Court deems just and proper.

Dated: May 1, 2024.

Respectfully submitted,


/s/ *R. Culver Schmid*_____
R. Culver Schmid, BPR No. 011128
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
265 Brookview Centre Way, Suite 600
Knoxville, TN 37919
Tel.: (865) 971-5103
cschmid@bakerdonelson.com


Gary Shockley, BPR No. 010104
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
1600 West End Avenue, Suite 2000
Nashville, TN 37203
Tel.: (615) 726-5600
gshockley@bakerdonelson.com


Eric G. Osborne, BPR No. 029719
Christopher C. Sabis, BPR No. 030032
William L. Harbison, BPR No. 007012
Micah N. Bradley, BPR No. 038402
Frances W. Perkins, BPR No. 040534
Brettson J. Bauer, BPR No. 039289
Sherrard Roe Voigt & Harbison, PLC
1600 West End Avenue, Suite 1750
Nashville, TN 372013
Tel.: (615) 742-4200
eosborne@srvhlaw.com
csabis@srvhlaw.com
bharbison@srvhlaw.com
fperkins@srvhlaw.com


*Counsel for Plaintiffs Phillip Lawson, Gabe Hart, Victor Ashe & James R. Palmer*

John E. Haubenreich, BPR No. 029202
The Protect Democracy Project
2020 Pennsylvania Avenue NW, #163
Washington, DC 20006
Tel.: (202) 579-4582
john.haubenreich@protectdemocracy.org

Orion Danjuma (*pro hac vice* forthcoming)
The Protect Democracy Project
82 Nassau St. #601
New York, NY 10038
Tel.: (202) 579-4582
orion.danjuma@protectdemocracy.org

Collin P. Wedel (*pro hac vice* forthcoming)
Arsham Ali Askari (*pro hac vice* forthcoming)
Christine T. Karaoglanian (*pro hac vice* forthcoming)
Sidley Austin LLP
350 South Grand Avenue
Los Angeles, CA 90071
Tel.: (213) 896-6000
cwedel@sidley.com
aaliaskari@sidley.com
ckaraoglanian@sidley.com


Rebecca B. Shafer (*pro hac vice* forthcoming)
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
Tel.: (312) 853-7000

rshafer@sidley.com

Jillian Sheridan Stonecipher (*pro hac vice* forthcoming)
Sidley Austin LLP
1501 K Street NW
Washington, D.C. 20005
Tel.: (202) 736-8000
jstonecipher@sidley.com

*Counsel for Plaintiff League of Women Voters of
Tennessee*